IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2001 Session

## G. KLINE PRESTON, IV v. GARRETT REALTY SERVICE, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 00C-1325     Walter C. Kurtz, Judge**

_____

**No. M2000-02350-COA-R3-CV - Filed August 27, 2001**

_____

This matter comes to us on appeal from summary judgment granted due to Tennessee's lack of personal jurisdiction over Defendant. Plaintiff attempted to rent a condominium in Florida and sued Defendant in Tennessee for breach of contract after Defendant discovered a mistake in the quoted price and refused to rent the condo to Plaintiff for the quoted price. The circuit court determined that Tennessee had no personal jurisdiction over Defendant and dismissed the case. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Lawrence D. Wilson, Nashville, Tennessee, for the appellant, G. Kline Preston, IV.

Michael Castellarin, Nashville, Tennessee, for the appellee, Garrett Realty Service, Inc.

**OPINION**

Plaintiff/Appellant, G. Kline Preston, IV (hereinafter 'Preston') went to Garrett Realty Services (hereinafter 'Garrett') in Seagrove Beach, Florida in July of 1999 while vacationing in Florida to discuss renting a condo for the next year. This was the first contact Preston had with Garrett Realty. The parties discussed the rental of a larger condo than the one Preston was currently renting from another agency. They discussed a two week rental for the following year, but did not agree on the exact price since the price list for the following year was not yet determined. However, the parties did discuss the rate for which the condo was currently renting and compared that rate to what he was paying at the time.

Preston testified that the condominium he rented in Florida during the summer of 1999 was a two bedroom for which he paid $1800 per week, or $3600 for two his two week rental. He also testified that the two bedroom condominium was not as nice at the three bedroom he was trying to rent from Garrett. The parties discussed the fact that the three bedroom condo he wished to rent for

the summer of 2000 was nicer and would be more expensive. An employee of Garrett testified that the summer rate for the condominium in 1999 was $2280 per week and that this rate was discussed with Preston during his initial contact with Garrett in Florida.

In January of the following year, Preston received a letter from Garrett Realty providing a price of $2370 for the *two week* rental period requested; however, this letter contained an error and actually only provided the price for a one week rental. On approximately February 4, 2000, Preston's wife called to book the rental using her husband credit/debit card as payment. A few weeks after that, Garrett contacted Preston to let them know there had been a mistake in the quoted price and to see if they still wanted the rental. Preston refused to accept the rental at the corrected price. His credit card had not been charged and was never charged.

Preston sued in Davidson County General Sessions Court for breach of contract and violation of Tennessee's consumer protection laws and obtained a judgment against Garrett in the amount of $2617.70. The case was appealed to Davidson County Circuit Court, which determined that Tennessee did not have *in personam* jurisdiction over Garrett and granted their Motion for Summary Judgment. Preston now appeals the circuit court's decision.

The decisive issue presented for review is whether the trial court was correct in finding that Tennessee did not have personal jurisdiction over the defendant. We find that Tennessee has no personal jurisdiction over Garrett in this matter and affirm the trial court.

Preston argued that Garrett failed to set forth sufficient facts to establish lack of minimum contacts with the State of Tennessee such that there was no jurisdiction over them and that Garrett did not provide facts to show there was no contact with Plaintiff in the State of Tennessee. Also, Garrett did not provide sufficient facts to show insufficient minimum contacts with the state to confer general jurisdiction. Preston pointed to the fact that Garrett's offer to lease was received by Plaintiff in Tennessee, that the offer was accepted by phone in Tennessee, and that payment was tendered in Tennessee. Preston further argued that Garrett admitted doing business in Tennessee by advertising in four major newspapers, thus, purposely availing itself of the jurisdiction of Tennessee.

As the inquiry here involves wholly a question of law, we review the decision of the circuit court *de novo*, without any presumption of correctness, in determining whether the requirements of Tennessee Rules of Civil Procedure 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

> [S]ummary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts.

*Staples*, 15 S.W.3d at 88 (citations omitted). In the case at bar, no party has questioned the material facts. The only issue is whether the facts confer jurisdiction on the State of Tennessee to decide this dispute.

Preston misstates the law and burden of proof in this matter arguing that Garrett must show lack of minimum contacts. However, it is well settled law that "[t]he burden of establishing jurisdiction over the persons of the defendants rests with the plaintiff." *International Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6ᵗʰ Cir. 1997). Garrett, in its Motion for Summary Judgment, showed that the undisputed facts presented by Preston did not provide the minimum contacts requisite for Tennessee to have jurisdiction in this case. As such, the motion was properly granted.

The basic test for jurisdiction was prescribed by the United States Supreme Court in *International Shoe Co., v. Washington*, 326 U.S. 310 (1945) and is based on due process requirements of the Constitution.

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*International Shoe*, 326 U.S. at 316. The court recognized two circumstances under which a state can have jurisdiction over an out-of-state defendant. The first is where a defendant's continuous and systematic activities give rise to the liabilities on which a law suit is based. *Id.* at 317. The second is were defendant's continuous activities are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* at 318.

The Supreme Court has continued to use this two tiered analysis of contacts to determine whether a defendant's contacts with the forum state comport with 'traditional notions of fair play and substantial justice.'

> When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction. Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation.

*Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 414 (1984).

When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State has been said to be exercising "general jurisdiction" over the defendants.

*Id.* at 415 n9.

In order for a state to have jurisdiction, a defendant must have minimum contacts with the forum state, either where a defendant's continuous and systematic activities give rise to the liabilities sued on or where a defendant's continuous activities are so substantial as to justify jurisdiction unrelated to those activities. In this case, the cause of action did not arise out of Defendant's conduct in Tennessee, and Defendant did not engage in continuous and substantial activities that would justify general jurisdiction for actions unrelated to those contacts.

In determining whether Tennessee can exercise general jurisdiction over a defendant we look at all of the defendant's contacts with the forum state. These contacts must be continuous corporate operations within the state that are so substantial and of such a nature that they would justify a suit against the defendant on a cause of action arising from dealings entirely distinct from those activities. *International Shoe*, 66 U.S. at 316.

The only evidence presented of contacts with the State of Tennessee are advertisements in three Tennessee news papers and advertisements in <u>Southern Living</u> magazine. Garrett also sent Preston a flyer containing rates for its condominiums and the letter containing Garrett's incorrect 'offer.' Garrett contacted Preston by phone to let them know the quoted price was a mistake and accepted payment via phone from Tennessee through Preston's credit/debit card. It is obvious that these contacts are not continuous and substantial and do not permit Tennessee to exercise general *in personam* jurisdiction over Defendant.

However, even if Tennessee does not have general jurisdiction over a defendant, it may assert specific jurisdiction over an out-of-state defendant if that defendant has "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 472 (1985), *citing Shaffer v. Heitner*, 433 U.S. 186, 218 (1997) (Stevens, J., concurring in judgment). "[T]his 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (citations omitted).

[T]he constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. . . . "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of *Hanson v. Denckla*:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."
>
> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the "unilateral activity of another party or third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection" with the forum State. Thus where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 474-76 (citations omitted). The minor and attenuated contacts Garrett had with Tennessee during their attempt to negotiate an agreement with Preston certainly do not rise to the level of minimum contacts that would cause Garrett to reasonably anticipate being haled into court in Tennessee.

*Burger King* further clarifies the issues in this case by giving guidance specifically directed at contract negotiations.

> If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot. . . . Instead, we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors - prior negotiations and contemplated future consequences along with the terms of the contract and the parties' actual course of dealing - that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Id.* at 478-79.

With regard to the alleged contract at issue, Preston contacted Garrett in Florida and all discussions regarding rental dates and price were held in Florida. The object of the contract is in

Florida, and performance of the contract would occur in Florida. A single letter, requested by Preston, providing a price for rental; an advertising flyer containing updated prices, sent to Preston in Tennessee after his tour of the property and decision to rent; a phone call from Preston, in Tennessee, to Garrett, in Florida, to reserve the desired property in Florida; and a phone call from Garrett, in Florida, to Preston, in Tennessee, to inform Preston of Garrett's mistake are not enough to establish minimum contacts such that Garrett purposefully availed itself of doing business in the State of Tennessee.

We find that Tennessee has no jurisdiction over this matter. The trial court properly granted Defendant's Motion for Summary Judgment and is herein affirmed. All other issues are pretermitted by this decision regarding jurisdiction.

_____
WILLIAM B. CAIN, JUDGE